## MARTIN v STINE

Docket No. 165857. Submitted April 13, 1995, at Grand Rapids. Decided November 21, 1995, at 9:35 A.M.

Holston Martin, III, a prisoner in the custody of the Department of Corrections, brought an action in the Alger Circuit Court against Wayne W. Stine and other employees of the department, after the plaintiff was found guilty in an administrative hearing of a rule infraction for having in his possession merchandise in excess of the amount allowed pursuant to the department's policy. The merchandise was sent to the plaintiff's home at his expense, and he received a five-day loss of privileges. The court, Charles H. Stark, J., granted summary disposition for the defendants, finding that subject-matter jurisdiction was lacking, the claim was barred because of governmental immunity, and the plaintiff failed to state a claim upon which relief could be granted. The plaintiff appealed.

The Court of Appeals *held*:

1. The plaintiff did not have a right to judicial review of the decision in the administrative hearing under MCL 791.255; MSA 28.2320(55), because minor misconduct charges that would not result in a loss of good time or disciplinary credits or in placement in punitive segregation are specifically excluded from those matters in which a prisoner is entitled to a hearing under the statute.

2. The present case does not involve a contested case and, therefore, is not reviewable under the Administrative Procedures Act.

3. The Legislature has addressed the issue of a prisoner's right to a hearing and judicial review and has determined that, under the circumstances of this case, a prisoner is not entitled to judicial review. The Legislature has specifically provided for those matters in which a prisoner is entitled to a hearing as

REFERENCES

Am Jur 2d, Administrative Law §§ 415-419, 421, 422, 426, 559; Constitutional Law §§ 552-559, 572, 602; Penal and Correctional Institutions §§ 65, 124, 125, 128.

See ALR Index under Administrative Law; Constitutional Law; Prisons and Prisoners.

well as judicial review. Those matters involve situations where the hearing may result in the loss by a prisoner of a right of a constitutional magnitude or incentives associated with the goal of rehabilitation.

4. The decision regarding the plaintiff's minor misconduct charge did not affect private rights or licenses.

5. The plaintiff had no right to possess the personal property in excess of the limitation. Therefore, no right was violated when the property was sent to the plaintiff's home. The five-day loss of privileges did not involve a deprivation of a right or license. The constitutional right to review of an agency's decision is not implicated in this case.

6. The plaintiff did not allege any conduct by any of the defendants that amounts to a deprivation of his constitutional rights.

7. Although the applicable prison rules and policy directive provide for an administrative hearing before a prisoner receives discipline, this, by itself, does not create a liberty interest or a due process right. The plaintiff's five-day loss of privileges is not the type of atypical, significant deprivation in which a state might conceivably create a liberty interest. This case does not involve the implication of a liberty interest under the Due Process Clause.

Affirmed.

1. ADMINISTRATIVE LAW — APPEAL — AVENUES OF RELIEF.

A litigant seeking judicial review of a decision by an administrative agency has three potential avenues of relief: the review prescribed in a statute applicable to the particular agency, the method of review for contested cases in §§ 103 to 105 of the Administrative Procedures Act, or an appeal pursuant to § 631 of the Revised Judicature Act (MCL 24.271 *et seq.*, 24.303, 24.304, 24.305; MSA 3.560[171] *et seq.*, 3.560[203], 3.560[204], 3.560[205]).

2. ADMINISTRATIVE LAW — APPEAL — PRISONS AND PRISONERS.

The judicial review of a final decision or order of a hearing officer of the Department of Corrections provided for under MCL 791.255; MSA 28.2320(55) applies to those decisions regarding hearings covered by MCL 791.251; MSA 28.2320(51), namely, matters that may result in the loss by a prisoner of a right, e.g., loss of good time or disciplinary credits or placement in punitive segregation.

3. PRISONS AND PRISONERS — MINOR MISCONDUCT CHARGES — HEARINGS.

Minor misconduct charges that would not result in a loss of good

time or disciplinary credits, or placement in punitive segregation, are specifically excluded from those matters in which a prisoner is entitled to a hearing (MCL 791.251; MSA 28.2320[51]).

4. PRISONS AND PRISONERS — MINOR MISCONDUCT CHARGES — JUDICIAL REVIEW.

Judicial review is not required of minor misconduct charges that would not result in a loss of good time or disciplinary credits, or placement in punitive segregation (MCL 791.255; MSA 28.2320[55]).

5. PRISONS AND PRISONERS — MINOR MISCONDUCT CHARGES — ADMINISTRATIVE PROCEDURES ACT.

Minor misconduct charges that would not result in a loss of good time or disciplinary credits or in placement in punitive segregation do not involve "contested cases" and thus are not reviewable under the Administrative Procedures Act (MCL 24.301; MSA 3.560[201]).

6. PRISONS AND PRISONERS — MINOR MISCONDUCT CHARGES — JUDICIAL REVIEW.

Minor misconduct charges that would not result in a loss of good time or disciplinary credits, or placement in punitive segregation, do not entitle a prisoner to judicial review under MCL 600.631; MSA 27A.631.

7. PRISONS AND PRISONERS — MINOR MISCONDUCT CHARGES — PRIVATE RIGHTS OR LICENSES.

Minor misconduct charges that would not result in a loss of good time or disciplinary credits, or placement in punitive segregation, do not "affect private rights or licenses" (Const 1963, art 6, § 28).

8. CONSTITUTIONAL LAW — PRISONS AND PRISONERS — LIBERTY INTERESTS.

A negative inference of a state prison regulation cannot be used to establish for the benefit of a state prison inmate a liberty interest protected by the Due Process Clause.

Holston Martin, III, in propria persona.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Allan J. Soros,* Assistant Attorney General, for the defendants.

Before: GRIBBS, P.J., and MARKMAN and D. E. SHELTON,* JJ.

MARKMAN, J. Plaintiff appeals the trial court's order granting defendants' motion for summary disposition. We affirm.

Plaintiff, a prisoner in the custody of the Department of Corrections, commenced this action on January 19, 1993. Plaintiff alleged in his complaint that on December 7, 1992, his cell was searched and his property was confiscated because he possessed merchandise in excess of the amount he was allowed to accumulate pursuant to the department's policy directive regarding prisoner personal property control, PD-BCF-53.01. Plaintiff further alleged that on December 12, 1992, an administrative hearing was held and that he was subsequently found guilty of a "minor rule infraction." Plaintiff claimed that, consequently, the merchandise was sent to his home at his expense and he received a five-day loss of privileges. Plaintiff further asserted that he appealed the decision to Assistant Deputy Warden Michael Crowley, who denied the appeal after finding that the elements of the charge against plaintiff had been established and that there had been no violation of plaintiff's right to due process.

Plaintiff then brought this action against four of the prison's employees: Warden Wayne Stine, Assistant Deputy Warden Michael Crowley, storekeeper Bob Siedell, and corrections officer/hearing officer Jim Nelson. Plaintiff's first cause of action alleged that defendant Siedell violated departmental policy by selling merchandise to plaintiff in excess of the amount that he was allowed to accumulate. Plaintiff's second cause of action, dealing with the confiscation of the merchandise, al-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

leged that he should not be punished because the storekeeper allowed him to make the purchase. His third cause of action alleged violation of his constitutional rights as a result of defendant Crowley's denial of plaintiff's appeal. Plaintiff's fourth cause of action alleged that defendant Stine was responsible for the above actions and that plaintiff was further deprived of his personal property in violation of his constitutional rights to due process and just compensation. Defendant Nelson presumably is included within catchall provisions of plaintiff's complaint.

On March 17, 1993, plaintiff filed a motion for leave to amend the complaint to include, among other things, allegations of jurisdiction based on MCL 600.605 and 600.611; MSA 27A.605 and 27A.611; MCR 2.605; and 42 USC 1983 and that plaintiff had exhausted his administrative remedies. This motion was denied by order dated April 5, 1993.

Defendants filed a motion for summary disposition, alleging that subject-matter jurisdiction was lacking, the claim was barred because of public employee immunity from liability, and plaintiff failed to state a claim upon which relief could be granted.[1] The trial court entered an order dated June 17, 1993, finding that defendants' positions were correct and granting their motion for summary disposition.

Plaintiff argues that the circuit court had jurisdiction to review his minor misconduct report. Litigants seeking judicial review of decisions by administrative agencies are guaranteed some opportunity for judicial review pursuant to Const 1963, art 6, § 28. There are three means of effectuating this right: (1) review pursuant to a procedure

---

[1] The motion for summary disposition is dated March 1, 1993, but apparently was not filed in the trial court until June 2, 1993.

specified in a statute applicable to the particular agency, see generally MCL 24.301 and 24.302; MSA 3.560(201) and 3.560(202); (2) the method of review for contested cases, MCL 24.271 *et seq.*; MSA 3.560(171) *et seq.*, in §§ 103-105 of the Administrative Procedures Act 1969 (APA), MCL 24.303-24.305; MSA 3.560(203)-3.560(205); or (3) an appeal pursuant to § 631 of the Revised Judicature Act, MCL 600.631; MSA 27A.631, in conjunction with which MCR 7.104(A) should be consulted. *Living Alternatives for the Developmentally Disabled, Inc v Dep't of Mental Health,* 207 Mich App 482; 525 NW2d 466 (1994).

First, we review a statute applicable to the Department of Corrections. MCL 791.251; MSA 28.2320(51) provides for the creation of a hearings division within the department. That section further specifies those hearings for which the hearings division is responsible, namely, those that may result in the loss by a prisoner of a "right." However, at the time of plaintiff's action, the statute expressly stated that the hearings division "shall not be responsible for a prisoner hearing that is conducted as a result of a minor misconduct charge that would not cause a loss of good time or disciplinary credits, or placement in punitive segregation." MCL 791.251(3); MSA 28.2320(51)(3).[2]

Judicial review of a final decision or order of a hearing officer is provided for under MCL 791.255; MSA 28.2320(55). Taken in context with MCL 791.251; MSA 28.2320(51), the judicial review afforded under this section applies to those decisions regarding hearings covered by MCL 791.251; MSA 28.2320(51), namely, matters that may result in the loss by a prisoner of a "right." Thus, because

___

[2] This section was amended slightly by 1994 PA 217, which became effective after the incident in this case.

minor misconduct charges that would not result in a loss of good time or disciplinary credits, or placement in punitive segregation, are specifically excluded from those matters in which a prisoner is entitled to a hearing, judicial review is similarly not required under MCL 791.255; MSA 28.2320(55). Accordingly, plaintiff has no right to judicial review under MCL 791.255; MSA 28.2320(55).[3]

Second, we turn to the terms of judicial review provided by the APA. The APA provides for judicial review of an agency's final decision or order in a "contested case." MCL 24.301; MSA 3.560(201). The APA defines "contested case" as follows:

> "Contested case" means a proceeding, including rate-making, price-fixing, and licensing, in which a determination of the legal rights, duties, or privileges of a named party is required by law to be made by an agency after an opportunity for an evidentiary hearing. [MCL 24.203(3); MSA 3.560(103)(3).]

See also MCR 7.105(A)(2).

Under 1987 AACS, R 791.5501(6), a prisoner charged with minor misconduct has a right to a fact-finding hearing under 1989 AACS, R 791.3310 and may be subject to sanctions provided in 1987 AACS, R 791.5505(4) (i.e., a loss of privileges). The fact-finding hearing is not a formal evidentiary hearing, but, rather, gives the prisoner the right to be present, speak on his own behalf, and generally to receive a copy of any department document

---

[3] Plaintiff argues that, despite the fact that minor misconduct hearings do not fall within the type of matters the hearing division must decide, MCL 791.255; MSA 28.2320(55) nevertheless entitles him to use the APA method for invoking judicial review. However, plaintiff relies on the version of the statute before its amendment by 1983 PA 155. MCL 791.255; MSA 28.2320(55) no longer contains the reference to the APA quoted in plaintiff's appellate brief. Therefore, plaintiff's reliance on this statute will not enable him to invoke the jurisdiction of the circuit court pursuant to the APA.

relevant to the issue before the hearing officer. 1989 AACS, R 791.3310(2). The hearing officer must also make a summary report of the hearing and decision or recommendation. 1989 AACS, R 791.3310(3). The prisoner may appeal to the officials designated in department policies and procedures upon giving notice of intent to appeal at the hearing and providing the written basis of the appeal within twenty-four hours of the receipt of the written decision. 1987 AACS, R 791.3320.

Accordingly, given the lack of a formal evidentiary hearing requirement, the present case does not involve a "contested case" and thus is not reviewable under the APA. See, *13-Southfield Associates v Dep't of Public Health,* 82 Mich App 678; 267 NW2d 483 (1978). It appears that plaintiff is further arguing invocation of jurisdiction based on the APA, even if the minor misconduct hearing is not a "contested case." However, we find no basis for, and no merit in, this argument.

We thus look to the third basis for judicial review, provided under MCL 600.631; MSA 27A.631:

> An appeal shall lie from any order, decision, or opinion of any state board, commission, or agency, authorized under the laws of this state to promulgate rules from which an appeal or other judicial review has not otherwise been provided for by law, to the circuit court of the county of which the appellant is a resident or to the circuit court of Ingham county, which court shall have and exercise jurisdiction with respect thereto as in nonjury cases. Such appeals shall be made in accordance with the rules of the supreme court.

While the Department of Corrections may be considered an "agency . . . authorized . . . to promulgate rules," we believe that the Legislature

has addressed the issue of a prisoner's right to a hearing and judicial review and has determined that, under the circumstances in this case, a prisoner is not entitled to judicial review.

Certainly, the phrase "from which an appeal or other judicial review has not otherwise been provided for by law" does not impair the Legislature's ability to preclude judicial review where constitutional rights are not implicated. To interpret this language as plaintiff suggests—to require judicial review even where the Legislature has affirmatively precluded judicial review whether expressly or, as in this case, by implication—is to interpret this provision in a nonsensical manner. Such an interpretation would forever bind subsequent Legislatures by the language of the Legislature that enacted MCL 600.631; MSA 27A.631 no matter how explicit the subsequent Legislatures were in limiting the application of judicial review. *Malcolm v East Detroit,* 437 Mich 132, 139; 468 NW2d 479 (1991). Further, such an interpretation would be contrary to the general rule of statutory interpretation that a more specific subsequent enactment of the Legislature is controlling to the extent of any inconsistencies with a prior more general enactment. *Gebhardt v O'Rourke,* 444 Mich 535, 542-543; 510 NW2d 900 (1994). Interpreted as plaintiff proposes, MCL 600.631; MSA 27A.631 would enable judicial review where "authorized under the law"; in all other cases, it would also enable judicial review because review has "not otherwise been provided for by law." We do not believe that such an interpretation is consistent with the overall structure and purpose of this provision or with the Legislature's intentions.

As previously explained, the Legislature has specifically provided for those matters in which a prisoner is entitled to a hearing as well as judicial

review. These matters involve situations where the hearing may result in the loss by a prisoner of a "right." The nonexhaustive list of "rights" provided in MCL 791.251; MSA 28.2320(51) "constitute[s] either rights of constitutional magnitude or incentives associated with the goal of rehabilitation." *Spruytte v Dep't of Corrections,* 184 Mich App 423, 431; 459 NW2d 52 (1990).

In *Spruytte,* this Court addressed a portion of the House Legislative Analysis of MCL 791.251; MSA 28.2320(51). The statute, House Bill 4126, was enacted as 1983 PA 155.[4] *Id.* The bill, among other things, eliminated the general entitlement to a hearing for loss of a "significant privilege." The legislative analysis states under "Arguments: For":

> By eliminating the general entitlement to a hearing for loss of a "significant privilege" the bill would help resist the expansion of hearing requirements for penalties imposed for minor misconduct charges. Recent court decisions have tended to give a generous interpretation to this term. The explicit provision that a hearing is not required on a minor misconduct charge that would not result in a loss of good time or disciplinary credits, or punitive segregation will also help to clarify the limits of a prisoner's entitlement to a hearing. By specifically listing the sanctions which do entitle a prisoner to a hearing the bill should reassure prisoners as to the extent of their protections and reduce complaints with regard to disciplinary actions which fall outside the list. [House Legislative Analysis, HB 4126, May 2, 1983 quoted in *Spruytte, supra* at 431-432.]

Consistent with the Legislature's intent to limit hearings regarding minor misconduct charges, we believe the Legislature similarly sought to limit

---

[4] As previously stated, see n 2, *supra,* MCL 791.251; MSA 28.2320(51) was further amended by 1994 PA 217.

review of decisions regarding minor misconduct charges. The fact that rules have been promulgated that provide for a fact-finding hearing regarding minor misconduct charges does not change this result. In limiting hearings, the Legislature sought to "reduce complaints with regard to disciplinary actions which fall outside the list [involving a prisoner's rights.]" House Legislative Analysis, HB 4126, *supra*. Permitting prisoners to appeal minor misconduct matters to the circuit courts completely frustrates the Legislature's expressed objective to reduce prisoner complaints.

We are aware that judicial review has been afforded in other contexts in which the Legislature has not required a hearing. See *J & P Market, Inc v Liquor Control Comm*, 199 Mich App 646; 502 NW2d 374 (1993). In *J & P Market, Inc*, this Court determined the appropriate standard of review of a decision by the Liquor Control Commission denying a request for transfer of a liquor license. The panel recognized that, unlike with respect to the revocation of a liquor license, the Liquor Control Act, MCL 436.1 *et seq.*; MSA 18.971 *et seq.*, did not require that a hearing be held to consider a license transfer request. *Id.* at 649. This Court concluded that because a hearing was not required, only the minimum standard of review under Const 1963, art 6, § 28 applied to such decisions, in other words, whether the decision was authorized by law. *Id.* at 650-651.[5] The Court did not discuss the propriety of judicial review in the first place or whether, in addition to hearings, judicial review had been addressed in the Liquor Control Act. Rather, the panel, implicitly finding judicial re-

[5] This Court further found, however, that because the decision whether to grant an exemption from the administrative rule addressing the denial of such licenses was discretionary, the Court would review the decision for an abuse of discretion. *Id.* at 651.

view appropriate, focused only on the standard of review.

In any event, it is important to point out that our decision in the present case does not eliminate the right to judicial review merely because of the lack of a required hearing. Instead, our decision rests upon an interpretation of legislative intent in addressing the right to judicial review. We believe that, in the immediate context, the Legislature sought to limit prisoner complaints and thus affirmatively eliminated judicial review of decisions such as occurred in this case. "Procedural rules designed for free citizens in an open society may not apply to the very different situations presented by a disciplinary proceeding in a state prison." *Jordan v Jarvis,* 200 Mich App 445, 449; 505 NW2d 279 (1993), citing *Hewitt v Helms,* 459 US 460, 472; 103 S Ct 864; 74 L Ed 2d 675 (1983).

In rendering this decision, we are mindful of the constitutional right to the review of agency decisions under Const 1963, art 6, § 28, which provides in pertinent part:

> All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and *affect private rights or licenses,* shall be subject to direct review by the courts as provided by law. [Emphasis added.]

However, in the present case, the decision regarding plaintiff's minor misconduct charge did not "affect private rights or licenses."

Plaintiff requested in his complaint that any reference to his minor misconduct violation be taken off his record. However, MCL 800.33; MSA 28.1403 requires only that a record of all major misconduct charges for which a prisoner has been found guilty be maintained and given to the parole

board.[6] Thus, the only consequences of the minor misconduct violation were: (1) the goods were sent home at plaintiff's expense and (2) plaintiff suffered a loss of privileges for five days.

With respect to the first consequence, the goods were not permanently taken from the prisoner, they were only sent to his home. MCL 800.42; MSA 28.1411 addresses the personal property that prisoners in correctional facilities may possess, but provides in subsection 5 that "[t]his section does not allow a prisoner to possess personal property of a type otherwise prohibited by the department of corrections for any reason."[7] PD-BCF-53.01 limits the goods that a prisoner may possess in prison. Thus, plaintiff had no "right" to possess the personal property in excess of the limitation. Accordingly, no "right" was violated when the goods were sent to his home. The second consequence, the five-day loss of privileges, similarly did not involve a deprivation of "a right or license." Plaintiff has not pointed to any law or rule providing him with a "right" to these privileges and we do not believe that plaintiff was entitled to them.[8] Accordingly, the constitutional right to the review of an agency's decision is not implicated in this case.

[6] The defendants state in their appellate brief that records of minor misconduct convictions are not kept in the prisoner's official record office file. They further state, although without citation to authority, that minor misconduct tickets can only be retained for sixty days. Even to the extent the tickets are retained, however, plaintiff does not show how that affects any "private rights or licenses."

[7] 1979 AC, R 791.6637(4), which provided a prisoner with the right to keep personal property in his housing unit "subject to reasonable regulations to safeguard the public health and the security, order, and housekeeping of the facility," was rescinded effective January 2, 1990. See 1989 AACS, R 791.6637. *Spruytte v Owens,* 190 Mich App 127, 132-135; 475 NW2d 382 (1991).

[8] We do not make this finding on the basis of a rights/privilege distinction and are aware that this distinction is no longer applicable in certain areas of the law, for example, procedural due process. *Bundo v Walled Lake,* 395 Mich 679, 690-691; 238 NW2d 154 (1976). We will discuss this issue more thoroughly in the context of whether defendant has been deprived of a liberty interest.

Plaintiff further argues that the circuit court has subject-matter jurisdiction to hear his claim for damages. Defendants claim that exclusive jurisdiction lies instead with the Court of Claims. The Court of Claims has exclusive jurisdiction to hear claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." MCL 600.6419(1)(a); MSA 27A.6419(1)(a). *Kell v Johnson,* 186 Mich App 562, 564; 465 NW2d 26 (1990). The exclusive jurisdiction of the Court of Claims encompasses all claims against the state and its instrumentalities for money damages. *Id.*[9]

As previously discussed, however, plaintiff brought his complaint against four named employees of the Department of Corrections in their individual capacities. The Court of Claims' exclusive jurisdiction extends to suits against certain designated state employees. See *Lowery v Dep't of Corrections,* 146 Mich App 342; 380 NW2d 99 (1985). However, the parties do not specifically address and argue whether the Court of Claims has exclusive jurisdiction with respect to plaintiff's claims against the individual defendants. In any event, it is unnecessary to decide this issue because plaintiff's claims do not otherwise survive summary disposition.

Plaintiff further brings claims under 42 USC 1983, alleging violations of various constitutional rights including the right to due process, the right not to be deprived of property without just compensation, and his Fifth Amendment right under the United States Constitution. We have reviewed plaintiff's allegations and find that plaintiff has failed to allege any conduct by any of the defen-

[9] The State Administrative Board has "discretionary authority upon the advice of the attorney general, to hear, consider, determine, and allow any claim against the state in an amount less than $1,000.00." MCL 600.6419(1); MSA 27A.6419(1).

dants that amounts to a deprivation of his constitutional rights. We point out that plaintiff was not deprived of his property; it was sent to his home. He had no right to possess the property in prison.

Furthermore, plaintiff was not denied the right to due process. We believe it necessary to point out that although the applicable prison rules and policy directive provide for an administrative hearing before a prisoner receives discipline, thus eliminating unbridled discretion by prison employees or officials, this, by itself, does not create a liberty interest or a due process right.[10]

In *Sandin v Conner,* 515 US —; 115 S Ct 2293; 132 L Ed 2d 418 (1995), the United States Supreme Court examined the circumstances under which state prison regulations afford inmates a liberty interest protected by the Due Process Clause and in doing so rejected an approach that bases a finding of a liberty interest on a negative inference of a prison regulation.

In *Sandin,* a prisoner was charged with both "high misconduct" and "low moderate misconduct." *Id.,* 115 S Ct 2296; 132 L Ed 2d 424. Following proceedings before an adjustment committee, he was found guilty of the alleged misconduct and was sentenced to thirty days' disciplinary segregation for the "high misconduct" offense and four hours' segregation for each of the other two offen-

---

[10] The policy directive at issue in this case provides, in part:

> Prisoner store expendable merchandise shall not be permitted to accumulate in excess of $45.00, with not more than a total of five bottles or cans of toilet articles. Whenever possible, stores will sell toilet articles in plastic containers only. . . . An administrative hearing in accordance with R 791.3310 shall be conducted to determine if property is contraband. If appropriate, misconduct charges are to be issued.

We have already addressed the rules regarding the right to the fact-finding hearing and the procedures involved.

ses of "low moderate misconduct" to be served concurrently with the thirty days for the "high misconduct" offense. *Id.* The prisoner brought a suit under 42 USC 1983 requesting, among other things, damages for a deprivation of procedural due process in connection with the disciplinary hearing. *Id.*, 115 S Ct 2296; 132 L Ed 2d 425. The Supreme Court reviewed the decision of the Ninth Circuit Court of Appeals that had found that the prisoner had a liberty interest in remaining free from disciplinary segregation. *Id.*[11] The Ninth Circuit Court of Appeals based its decision on a prison regulation that instructed the adjustment committee to find guilt when a charge of misconduct is supported by substantial evidence. *Id.* The court found that the committee's duty to find guilt was nondiscretionary and that, by negative inference, the committee could not impose segregation if it did not find substantial evidence of misconduct. *Id.* The court viewed this as a state-created liberty interest. *Id.*

In its analysis, the United States Supreme Court first observed that past Supreme Court precedent had shifted the liberty interest inquiry from one focusing on the nature of the interest or deprivation involved to an examination of prison guidelines "to determine whether mandatory language and substantive predicates created an enforceable expectation that the state would produce a particular outcome with respect to the prisoner's conditions of confinement." *Id.,* 115 S Ct 2298; 132 L Ed 2d 427-428. The Court noted the problems with

[11] The district court had granted summary disposition in favor of the prison officials. *Id.*, 115 S Ct 2296; 132 L Ed 2d 425. The Ninth Circuit Court of Appeals reversed, finding that the prisoner had a liberty interest protected by due process and that there was a disputed question of fact with respect to whether the prisoner received due process. *Id.*

this approach, such as encouraging prisoners "to comb regulations in search of mandatory language on which to base entitlements to various state-conferred privileges." *Id.,* 115 S Ct 2299; 132 L Ed 2d 428. The Court concluded that the search for such negative implication "strayed from the real concerns undergirding the liberty protected by the Due Process Clause." *Id.,* 115 S Ct 2300; 132 L Ed 2d 429.

The Court observed:

> Admittedly, prisoners do not shed all constitutional rights at the prison gate but " '[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.' " Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law. [*Id.,* 115 S Ct 2301; 132 L Ed 2d 431. Citations omitted.]

The Court held that the segregated confinement of the prisoner as discipline did not present "the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Id.* Nor did the state's action inevitably affect the duration of his sentence. *Id.,* 115 S Ct 2302; 132 L Ed 2d 431.

Consistent with the Supreme Court's reasoning, we do not find plaintiff's five-day loss of privileges to be "the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." Rather, we believe that plaintiff's loss of privileges does not present a "dramatic departure" from the basic conditions of his sentence, *id.,* and will not affect the duration of the sentence im-

posed on him.[12] Thus, the present case does not involve the implication of a liberty interest under the Due Process Clause. While prisoners retain other protection from arbitrary state action even within the expected conditions of confinement, *id.*, 115 S Ct 2302, n 11; 132 L Ed 2d 432, n 11, we do not believe that plaintiff has alleged any facts that would support such claims.[13]

Accordingly, the trial court did not err in granting defendants' motion for summary disposition.

Affirmed.

---

[12] This reasoning further applies with respect to the goods sent to plaintiff's home. Plaintiff had no "right" to keep these goods in prison.

[13] Plaintiff further argues that the trial court erred in denying his motion to amend his complaint. However, on the basis of the conclusions stated in this opinion, we conclude that amendment would have been futile and thus was properly denied. We note that in plaintiff's amended complaint, he further attempts to add a claim for intentional infliction of emotional distress. However, we note that defendants are immune from any tort claims sought by plaintiff in this case under Michigan's governmental tort liability act, MCL 691.1401 *et seq.*; MSA 3.996(101) *et seq.* As defendants point out, MCL 691.1407; MSA 3.996(107) grants immunity to individual officers and employees of a governmental agency except for acts of gross negligence. *Harrison v Director of Dep't of Corrections,* 194 Mich App 446, 451; 487 NW2d 799 (1992). We agree that plaintiff has not set forth any set of facts that could possibly establish that any of the defendants committed acts of gross negligence. MCR 2.116(C)(8) and (10). Cf. *Johnson v Wayne Co,* 213 Mich App 143; 540 NW2d 66 (1995).